UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Randy Shepherd, et al.,** | ) | **CASE NO. 1:11 CV 127** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **J. Steve Sheldon, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion to Dismiss (Doc. 36) filed by defendants, Department of Veterans Affairs, Lisa Salser, and Julie Berg.  This case alleges constitutional wrongdoing.  For the reasons that follow, the motion is GRANTED.

**FACTS**

Only those facts necessary for a resolution of the pending motion are set forth herein.

Plaintiffs, Randy Shepherd (hereinafter "Shepherd") and Cynthia Shepherd, bring this action against defendants, J. Steve Sheldon and Eric Bosco of the Richland County Sheriff's Department; the City of Mansfield; Magistrate Judge Gary Dalbey; James Mayer, Jr.,

Christopher Tunnell, Gary Bishop, Brent Robinson, and Andrew Kvochich of the Richland County Prosecutor's Office; Alyce Cline, the Clerk of Court for Shelby Municipal Court; Teena Barber, the Deputy Clerk of Court for the Shelby Municipal Court; the Department of Veteran's Affairs; Julie Berg and Lisa Salzer of the Department of Veteran's Affairs; the Richland County Sheriff's Department; the City of Shelby; and the Richland County Prosecutor's Office.[1]

Plaintiffs generally allege that defendants conspired with others to violate their civil rights, the Racketeer Influenced and Corrupt Organizations Act, and Ohio's corrupt activity statute.

In 2004, Shepherd became involved in litigation with the Richland County Child Support Enforcement Agency concerning various child support and custody matters. Shepherd represented himself in the litigation, and alleges that "he became involved in various legal battles with the Courts, the Court Clerks, the Richland County, Ohio CSEA, the Richland County, Ohio Prosecutor's Office, and other factions of the Federal, State, County and Municipal Governments." (Cmplt. p. 7.) Shepherd became frustrated with his inability to resolve the various issues in his case, and sought professional psychological assistance from a mental health professional at the United States Department of Veterans Affairs (VA). Plaintiffs allege that defendants Berg and Salzer, agents for the VA, "unlawfully, maliciously and in dereliction of their duties as medical personnel, criminally and/or intentionally disclosed confidential information relevant to Plaintiff #1, Randy Shepherd, without his consent or agreement." (Id. at pp. 8, 39, 40.)

---

[1] Plaintiffs also sued the Honorables James DeWeese and James Henson. The Court previously dismissed these defendants.

While not perfectly clear, plaintiffs' complaint appears to allege that defendants Berg and/or Salzer contacted DeWeese and told DeWeese that while under the care of VA medical personnel, Shepherd made threats against DeWeese and other Richland County Court of Common Pleas judges. (Id. at ¶¶ 4-8.)  According to plaintiff, the communications were made during the course of the physician/patient privilege.  Plaintiffs allege that these accusations were false and that DeWeese knew or should have known that the accusations were false, but that DeWeese "unlawfully caused this information to be disseminated to other Defendants, such as the Richland County, Ohio Probation Officer, Dan Myers, the Mansfield Police Department and ultimately to Defendant Eric Bosco of the Richland County, Ohio Sheriff's Office." (Id. at ¶ 4.)

Plaintiffs further allege that as a result of the dissemination of this information, defendant Henson signed "an illegal search warrant . . . for Plaintiffs' home to search for weapons and evidence of a plot against Defendant James Henson himself, and other members of the Judiciary. . . ." (Id. at ¶ 10.)  Plaintiffs allege that the search warrant was not supported by probable cause, and that the felony charge of "weapons under disability" upon which the search warrant was issued was based upon false information that Shepherd had been involuntarily committed to the VA facility. (Id. at ¶ 9.)  According to Shepherd, he "voluntarily departed, by his own accord, the VA facility approximately ten (10) hours after the statements made by Randy because competent medical personnel at the VA deemed any statements made by Randy Shepherd harmless." (Id. at ¶ 7.)

After the search warrant was executed on January 20, 2009, "numerous weapons and other lawful chattels belonging to the Plaintiffs" were seized, and Shepherd was arrested and charged with possession of marijuana and having a weapon under a disability. (Id at pp. 8-9 and

3

¶ 9.) Plaintiffs allege Shepherd was "incarcerated and held without reasonable bond or bail, was refused a preliminary hearing, and detained without due process of law, until February 18, 2009 when all felony charges against the Plaintiff #1, Randy Shepherd [were dismissed]." (Id. at 9.) Plaintiffs also allege that, although the felony charges against Shepherd were dismissed on February 18, 2009, the misdemeanor charges "languished in the Municipal Court of Shelby, Ohio" for another year until those charges were also dismissed. (Id.)

The complaint contains nine claims for relief. Count one is a RICO claim. Count two is a conspiracy claim. Count three is a wrongful arrest claim in violation of 42 U.S.C. § 1983. Count four is a municipal liability claim. Count five is a First Amendment claim. Count six is a Second Amendment claim. Count seven is a Fourteenth Amendment claim. Count eight is a *Bivens* claim. Count nine is a *Pottawattamie County v. McGhee* claim.

Defendants VA, Berg, and Salzer move to dismiss the complaint and plaintiffs oppose the motion.

**STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re*

*Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997)).  "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level."  *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915, at *3 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### **ANALYSIS**

Defendants move to dismiss all counts plaintiffs assert against them.  The Court will address the claims, with the exception of the *Bivens* claim, in the order the parties address them in the briefing.

1.	Count seven (due process)

Defendants argue that count seven must be dismissed because there is no constitutional right to "informational" privacy under the due process clause.  Specifically, defendants argue that the Sixth Circuit has recognized an informational privacy right only in very narrow circumstances, none of which are present here.  According to defendants, any constitutional right to informational privacy does not extend to the reporting of threats made during a psychotherapy session.   In response, plaintiffs argue that the facts of this case fit squarely within the contours of the right as defined by the Sixth Circuit.  According to plaintiffs, defendants improperly released mental health information gathered during the course of an evaluation.  Plaintiffs claim that the release of information far exceeded the scope of any possible exception to the physician patient privilege and some of the information was incorrect.  As such, defendants violated

5

plaintiffs' right to informational privacy.

Upon review, the Court finds that plaintiffs fail to state a claim for which relief may be granted. Plaintiffs make only a general statement that "alleged threats" were "illegally" disclosed by defendants. (Compl. ¶ 5). According to plaintiffs, no "viable" threats were made. Plaintiffs further allege that Shepherd was seeking medical help at the time the information was disclosed. Approximately ten hours after "the statements" were made, Shepherd voluntarily left the VA and the VA deemed "any statements" harmless. Plaintiffs further allege that defendants disclosed that Shepherd had used marijuana. (Compl. ¶ 8). According to the complaint, there was a false and malicious contention that Shepherd was "involuntarily committed. (Compl. ¶ 9). It is not entirely clear who made this contention. (Id.). These allegations, even accepted as true, do not rise to the level of a constitutional violation.

The Sixth Circuit has recognized a constitutional right to "informational" privacy arising under the Due Process Clause only under narrow circumstances.

> A plaintiff alleging a violation of her right to informational privacy must therefore demonstrate that the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. Only after a fundamental right is identified should the court proceed to the next step of the analysis– the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private.

*Lamert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). It appears that the Sixth Circuit has recognized the right to informational privacy in only two cases. *See*, *Id*. (holding that only twice has the Sixth Circuit found the existence of a constitutional right to informational privacy); *Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011)(distinguishing only two cases in determining that no right to informational privacy existed). In *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), the Court concluded that a constitutional right to informational privacy exists

6

with respect to the disclosure of detailed personal information, including names, phone numbers, addresses, and social security numbers of undercover police officers and their family members, because there existed a fundamental interest in preserving the lives of the officers and their family members. The Sixth Circuit concluded that the fundamental right to life and safety supported the existence of the right to information privacy. In *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), the Sixth Circuit held that a rape victim had an informational privacy right rooted in the due process clause where the sheriff held a press conference and released highly personal and extremely humiliating details of the rape, some of which the victim had not even told her husband. In *Bloch*, the court concluded that the fundamental right to sexuality and choices about sex" are "interests of an intimate nature which define significant portions of our personhood." The court concluded that these interests have historically been deemed fundamental rights. As such, they are sufficient to support a claim for deprivation of a constitutional right to informational privacy.

Here, unlike in *Kallstrom* and *Bloch*, plaintiffs fail establish that the interest at stake relates to a fundamental right. Plaintiffs allege that defendants improperly disseminated information about threats made by Shepherd, as well as his use of marijuana. According to plaintiffs, disclosure of this information led to "personal humiliation" as well as bodily harm, in that Shepherd was arrested as a result of the dissemination. This Court disagrees with plaintiffs that the disclosure of this type of information impacts a fundamental right. As an initial matter, even if the information may have proved humiliating, plaintiffs misquote the holding in *Bloch*. Plaintiffs erroneously claim that the information need only be of a "sexual, personal, *or* humiliating" nature when, in fact, *Bloch* held a fundamental interest was at stake because the

7

information was of a sexual, personal, *and* humiliating nature. The information at issue in this case does not meet these criteria. The Court finds that there is no fundamental right at stake where the disclosure involves personal threats against other individuals and drug use. As noted in *Lambert*, plaintiffs face an uphill battle when attempting to create new fundamental interests. Plaintiffs fail to identify, let alone establish, that any fundamental interest is implicated by the disclosure of threats against others and drug use.

Plaintiffs also argue that a fundamental interest is at stake because of the manner in which the disclosure occurred. Specifically, it appears that plaintiffs' primary argument is that defendants improperly disclosed the information in violation of the physician-patient privilege.[2] Plaintiffs point to no law suggesting that the physician patient-privilege arises from the Constitution. Further, in the Sixth Circuit the release of medical records does not implicate a fundamental right. *See, e.g.*, *Summe v. Kenton County Clerk's Office*, 604 F.3d 257 (6th Cir. 2010)(assuming *arguendo* that the information constituted a medical record, its release did not violate a constitutional right to informational privacy); *Jarvis v. Wellman*, 52 F.3d 125 (6th Cir. 1995)("Disclosure of plaintiff's medical records does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution."). *Mann v. University of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997)(noting that the Sixth Circuit has consistently rejected the argument that the disclosure of medical records violates a fundamental right). Accordingly, the Court finds that the Sixth Circuit would not recognize a constitutional right to informational privacy in

---

[2] For example, plaintiffs' argument would clearly fail if the defendants were not physicians. There would certainly be no fundamental right at stake if Shepherd disclosed threats and drug use to another state actor, who later informed the authorities.

8

this case because no fundamental right is implicated by the disclosure of threats and drug use, even if made in the context of the physician-patient relationship.³ As such, plaintiffs fail to state a claim for violation of due process.⁴

2. Count two (conspiracy under 42 U.S.C. § 1985)

The parties agree that in order to state a claim for conspiracy under 42 U.S.C. § 1985, plaintiffs must prove,

> (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

The plaintiff must also show that the conspiracy was motivated by racial, or other class based animus. *Id.* (*citing Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)).

Defendants argue that plaintiffs fail to allege any class based animus. Defendants further

---

³ Even if a fundamental right existed, the government's interest in protecting the safety of its employees, including threats and possible drug use of the individual making the threats, weighs strongly in favor of disclosure of the information.

⁴ Plaintiffs also appear to allege that certain statements made by defendants were false. The Court finds that plaintiffs' allegations do not state a claim for a constitutional violation. Rather, these claims would at best appear to arise under the law of defamation. Plaintiffs, however, expressly disavow the existence of any such claims. For example, plaintiffs move to strike the notice of substitution filed by the United States with respect to any common law tort claims on the grounds that no such claims are plead in the complaint. Although the Court will not strike the substitution, the Court finds that dismissal of the United States is warranted.

argue that the complaint, at best, contains only conclusory allegations of a conspiracy.  In response, plaintiffs argue that defendants were motivated by their belief that plaintiffs were "crazy."  According to plaintiffs, this qualifies as a disability.  In the alternative, plaintiffs argue that they were discriminated against based on their political beliefs and, as such, are members of a protected class.  Plaintiffs also suggests that they were members of the "poor or *pro se* litigant" protected class.

Upon review the Court finds that plaintiffs fail to state a claim for conspiracy under 42 U.S.C. § 1985(3) because they do not allege that they are members of a protected class.  There are simply no allegations suggesting that plaintiffs are members of any protected class.  Contrary to alleging that they are disabled, plaintiffs expressly aver that they are not disabled and that defendants knew that Shepherd was not suffering from any disability.  *See*, e.g., Compl. ¶¶ 10, 16 (noting that certain defendants knew the information about Shepherd was false).  Similarly, plaintiffs do not allege that the conspiracy was motivated by plaintiffs' political beliefs or because they were "poor and/or pro se litigants."  Moreover, the Court agrees with defendants that the complaint does not contain allegations of a conspiracy sufficient to withstand a motion to dismiss.  The complaint alleges only that the moving defendants wrongfully disclosed information obtained during the physician-patient relationship.  Outside of this factual allegation, there are only legal conclusions regarding the conspiracy claim.  (See, Compl. at ¶¶ 109, 110).  These allegations are insufficient to meet the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As such, the conspiracy claim fails for this additional reason.

       3.      Count five (First Amendment)

Defendants move to dismiss count five, which alleges that defendants violated plaintiffs' rights to free speech as guaranteed by the First Amendment.  According to defendants, the complaint does not specifically name them as defendants to this count or specifically identify what actions defendants took to interfere with plaintiff's First Amendment rights.

In response, plaintiffs argue that count five is asserted against all "defendants," which includes the moving defendants.  Plaintiffs further argue that the complaint alleges that Shepherd expressed a clear dissatisfaction with the local judicial system and this confidential information was wrongly shared with the local governmental officials.   According to plaintiffs, defendants intentionally sought to deprive plaintiffs of the right to complain about the government.

Upon review, the Court finds that the claim must be dismissed.  Although plaintiffs argue in their brief that the speech disclosed to defendants was "political" in nature, there are no such allegations in the complaint.  In fact, the complaint does not identify the speech at all.  Rather, plaintiffs allege only that,

> The alleged threats were said to have originated from a confidential and privileged communication made by [Shepherd], to a representative of the United States of America Veteran's Administration Clinic, and illegally disclosed...."  (Compl. ¶ 5).

Plaintiffs further allege that defendants told law enforcement officers that plaintiff Randy Shepherd had used marijuana.  (Compl. ¶ 9).

Throughout the complaint, plaintiffs simply allege that defendants "illegally and/or criminally disclosed and/or disseminated false and/or confidentially protected information...." (See, e.g., Compl. ¶¶ 40, 41, 91, 92, 104, and p. 8).  Other than vague references to "threats" and one allegation that defendants unlawfully disclosed plaintiff Randy Shepherd's marijuana use, there are no allegations identifying the nature or content of the speech.  Thus, although argued in

11

their brief, plaintiffs simply do not allege that they engaged in protected political speech. Plaintiffs make no argument that the alleged threats are protected speech. Nor do plaintiffs argue that defendants retaliated against them based on the statement regarding marijuana usage.[5]

Thus, to the extent plaintiffs could be said to have made First Amendment allegations against the moving defendants,[6] the Court finds that plaintiffs fail to state a claim for which relief may be granted as plaintiffs fail to allege any constitutionally protected speech.

4.  Counts six and three (Second and Fourth Amendment claims)

Defendants argue that these counts must be dismissed because plaintiffs fail to allege that any of the moving defendants personally participated in the arrest of Shepherd or the seizure of plaintiffs' guns. Plaintiffs respond that defendants need not personally participate in the unconstitutional conduct because plaintiffs allege the existence of a conspiracy.

Upon review, the Court finds that these claims must be dismissed. As defendants correctly point out, there are no allegations suggesting that the moving defendants participated in the arrest of Shepherd or the seizure of the guns. Further, this Court concluded that plaintiffs fail to state a claim for conspiracy. As such, plaintiffs' argument is rejected and these claims, to the extent they are asserted against defendants, are dismissed.

---

[5] Again, while the statement was made in the context of the physician-patient relationship, plaintiffs do not make any attempt to argue that outside of this context such statements are protected by the First Amendment. Moreover, plaintiffs make no argument regarding First Amendment rights in the context of the physician-patient privilege.

[6] Although the complaint is 59 pages long, the allegations contain very little factual support for the claims asserted against the moving defendants. Nor is it entirely clear whether the First Amendment claim is even asserted against the moving defendants.

5.     *Bivens* claim (count 8)

Defendants argue that there can be no implied *Bivens* claim because the Privacy Act, HIPPA, Ohio law, and the FTCA are special factors precluding a *Bivens* damages remedy for alleged constitutional violations.   Plaintiffs appear to argue that HIPPA and the other statutes relied on by defendants do not have an enforcement mechanism.  Therefore, the Court should recognize a *Bivens* claim.

Upon review, the Court finds that plaintiffs' *Bivens* claim fails for the simple reason that plaintiffs fail to allege any actionable constitutional violation.  This Court dismissed all of plaintiffs' constitutional claims and, as such, the *Bivens* claim fails as well.

5.     28 U.S.C. § 1983 (count 3)

Plaintiffs also allege a claim under 28 U.S.C. § 1983.  As defendants correctly note, this statute does not apply to defendants as they are federal actors and plaintiffs do not allege that these federal defendants were *acting* under color of state law. *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997).  Regardless, a claim under 28 U.S.C. 1983 also requires an underlying constitutional violation.  As no such violation is properly alleged, the claim fails for this additional reason.

6.     RICO (count one)

Defendants argue that plaintiffs fail to state a claim against them under the RICO statute because neither the federal government nor its agencies may be sued under RICO.  Plaintiffs do not offer any opposition to defendants' argument or motion in this regard.  Having not opposed defendants' motion, the Court finds that the RICO claim must be dismissed.

7.     HIPPA and tort claims

13

Plaintiffs concede that they have not asserted a claim under HIPPA.[7]  Plaintiffs further expressly state that they have not alleged any tort claims.  As such, to the extent these claims could be construed to exist in the complaint, the claims are dismissed.

8.	Counts four and nine (remaining claims)

Count four is a claim for municipal liability and count nine is a claim under *McGhee v. Pottawattamie County*, 547 F.3d 922 (8th Cir. 2008).  A cursory review of the complaint demonstrates that these claims are not asserted against the moving defendants.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (Doc. 36) filed by defendants, Department of Veterans Affairs, Lisa Salser, and Julie Berg is GRANTED.

IT IS SO ORDERED.

      /s/ Patricia A.Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/21/11

---

[7]  Plaintiffs appear to concede that HIPPA does not create a private cause of action.