## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Randy Shepherd, et al., | ) | CASE NO. 1:11 CV 127 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| J. Steve Sheldon, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |

### <u>INTRODUCTION</u>

This matter is before the Court upon Defendants J. Steve Sheldon, Eric Bosko, Gary Dalbey, James Mayer, Jr., Christopher Tunnell, Gary Bishop, Brent Robinson, Andrew Kvochich Richland County Sheriff's Department, and the Richland County Prosecutor's Office's Motion for Judgment on the Pleadings (Doc. 39). This case alleges constitutional wrongdoing. For the reasons that follow, the motion is GRANTED.

### <u>FACTS</u>

Only those facts necessary for a resolution of the pending motion are set forth herein.

Plaintiffs, Randy Shepherd (hereinafter "Shepherd") and Cynthia Shepherd, bring this

action against defendants,  J. Steve Sheldon and Eric Bosko of the Richland County Sheriff's Department; the City of Mansfield; Magistrate Judge Gary Dalbey; James Mayer, Jr., Christopher Tunnell, Gary Bishop, Brent Robinson, and Andrew Kvochich of the Richland County Prosecutor's Office; Alyce Cline, the Clerk of Court for Shelby Municipal Court; Teena Barber, the Deputy Clerk of Court for the Shelby Municipal Court; the Department of Veteran's Affairs and Julie Berg and Lisa Salzer of the Department of Veteran's Affairs (the "federal defendants"); the Richland County Sheriff's Department; the City of Shelby; and the Richland County Prosecutor's Office.[1]

Plaintiffs generally allege that defendants conspired with others to violate their civil rights.

In 2004, Shepherd became involved in litigation with the Richland County Child Support Enforcement Agency concerning various child support and custody matters.  Shepherd represented himself in the litigation, and alleges that "he became involved in various legal battles with the Courts, the Court Clerks, the Richland County, Ohio CSEA, the Richland County, Ohio Prosecutor's Office, and other factions of the Federal, State, County and Municipal Governments."  (Cmplt. p. 7.)  Shepherd became frustrated with his inability to resolve the various issues in his case, and sought professional psychological assistance from a mental health professional at the United States Department of Veterans Affairs (VA).  Plaintiffs allege that defendants Berg and Salzer, agents for the VA, "unlawfully, maliciously and in dereliction of their duties as medical personnel, criminally and/or intentionally disclosed confidential

---

[1]    Plaintiffs also sued the Honorables James DeWeese and James Henson.  The Court previously dismissed these defendants, as well as the federal defendants.

2

information relevant to Plaintiff #1, Randy Shepherd, without his consent or agreement."  (Id. at pp. 8, 39, 40.)

While not perfectly clear, plaintiffs' complaint appears to allege that defendants Berg and/or Salzer contacted DeWeese and told DeWeese that while under the care of VA medical personnel, Shepherd made threats against DeWeese and other Richland County Court of Common Pleas judges.  (Id. at ¶¶ 4-8.)  According to plaintiff, the communications were made during the course of the physician/patient privilege.  Plaintiffs allege that these accusations were false and that DeWeese knew or should have known that the accusations were false, but that DeWeese "unlawfully caused this information to be disseminated to other Defendants, such as Richland County, Ohio Probation Officer, Dan Myers, the Mansfield Police Department and ultimately to Defendant Eric Bosco of the Richland County, Ohio Sheriff's Office."  (Id. at ¶ 4.)

Plaintiffs further allege that as a result of the dissemination of this information, defendant Henson signed "an illegal search warrant . . . for Plaintiffs' home to search for weapons and evidence of a plot against Defendant James Henson himself, and other members of the Judiciary. . . ."  (Id. at ¶ 10.)  Plaintiffs allege that the search warrant was not supported by probable cause, and that the felony charge of "weapons under disability" upon which the search warrant was issued was based upon false information that Shepherd had been involuntarily committed to the VA facility.  (Id. at ¶ 9.)  According to Shepherd, he "voluntarily departed, by his own accord, the VA facility approximately ten (10) hours after the statements made by Randy because competent medical personnel at the VA deemed any statements made by Randy Shepherd harmless." (Id. at ¶ 7.)  Plaintiffs allege that defendant Bosko of the Richland County Sheriff's office provided a false affidavit in support of the search warrant.  (Id. at ¶ 30.)

3

After the search warrant was executed on January 20, 2009, "numerous weapons and other lawful chattels belonging to the Plaintiffs" were seized, and Shepherd was arrested and charged with possession of marijuana and having a weapon under a disability.  (Id at pp. 8-9 and ¶ 9.)  Plaintiffs allege that defendant Dalbey unlawfully set a cash bond of $75,000 and "acted outside the scope of his authority." (Id. at ¶ 15).  According to plaintiffs, defendant Bishop, an assistant prosecutor, requested a competency hearing even though Shepherd protested the hearing, and evidence indicated Shepherd was competent. (Id. at ¶ 22).  Plaintiff claims that "defendant Bishop...falsely misrepresented facts to the Court that indicated that Shepherd had been determined to be 'homicidal', and that Shepherd had a history of mental illness and disease. No such evidence to support this claim existed at that time, or at any time.  It was a fabrication." (Id.)  Plaintiffs further allege that the competency hearing was not done within the time prescribed by law.  (Id. at ¶ 23.)  According to the complaint, Shepherd "submitted relevant information to defendants Gary Bishop and Christopher Tunnell...conclusively revealing that Shepherd was competent, had never been deemed incompetent, was never under a weapon's 'disability' and was lucid."  (Id. at ¶ 27).  Despite this knowledge, defendants "still vigorously pursued false and malicious charges against Shepherd."  (Id.)

Plaintiffs allege that Shepherd was "incarcerated and held without reasonable bond or bail, was refused a preliminary hearing, and detained without due process of law, until February 18, 2009 when all felony charges against the Plaintiff #1, Randy Shepherd [were dismissed]." (Id. at p. 9.)  Plaintiffs also allege that, although the felony charges against Shepherd were dismissed on February 18, 2009, the misdemeanor charges "languished in the Municipal Court of Shelby, Ohio" for another year until those charges were also dismissed.  (Id.)

4

Even after the weapons with disability charge was dismissed, defendants refused to return the weapons they seized during the search of plaintiff's home. (Id. at ¶ 36).

The complaint contains nine claims for relief.  Count one is a RICO claim.  Count two is a conspiracy claim.  Count three is a wrongful arrest claim in violation of 42 U.S.C. § 1983. Count four is a municipal liability claim.  Count five is a First Amendment claim.  Count six is a Second Amendment claim.  Count seven is a Fourteenth Amendment claim.  Count eight is a *Bivens* claim.  Count nine is a *Pottawattamie County v. McGhee* claim.

Defendants J. Steve Sheldon, Eric Bosko, Gary Dalbey, James Mayer, Jr., Christopher Tunnell, Gary Bishop, Brent Robinson, Andrew Kvochich Richland County Sheriff's Department, and the Richland County Prosecutor's Office's move for judgment on the pleadings. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Where a motion for judgment on the pleadings is based on the argument that the complaint fails to state claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff."  *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  In construing the

5

complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997)).  "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915, at *3 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### **ANALYSIS**

1.       Richland County Sheriff's and Proseuctor's Departments

These defendants argue that they are entitled to judgment because they are not amenable to suit.  According to defendants, it is well-settled that an Ohio Sheriff's Department is not capable of being sued.  In addition, defendants argue that, as a sub-unit of Richland County, the Proseuctor's Office is also not capable of being sued.  Plaintiffs do not directly dispute this assertion.  Rather, plaintiffs argue that the Sheriff and the Prosecutor are capable of being sued. In addition, plaintiffs ask that if "the court finds that the Richland County Commissioners should be sued instead" that leave to amend be granted.

Upon review, the Court finds that Richland County Sheriff's Office and the Richland County Prosecutor's Office are entitled to dismissal as they are not entities capable of being sued. *See, e.g.*, *Petty v. County of Franklin*, 478 F.3d 341 (6th Cir. 2007)(finding that sheriff's

office is not amenable to suit).[2]  Accordingly, these "entities" are dismissed.  The Court declines to afford plaintiffs with leave to amend in order to substitute.  As set forth below, all claims against the prosecutor and assistant prosecutor are unavailing.  The same holds true with respect to plaintiffs' claim for "municipal liability."

 2. RICO

  Defendants argue that the complaint fails to state a RICO claim because the claim is not adequately pled.  According to defendants, plaintiffs fail to allege predicate acts sufficient to state a claim under RICO.  Nor do defendants allege the existence of an enterprise separate and distinct from the individual defendants.  In response, plaintiffs argue that they have alleged a conspiracy by the various prosecutors and other county defendants to unlawfully seize plaintiffs' property "and to enter their home without legally sufficient cause to do so."  Plaintiffs further argue that defendants illegally detained plaintiffs.  According to plaintiffs, "defendants' [sic] were given a great deal of responsibility and trust in operating and directing its affairs and their manipulation of this power transformed legitimate functions into illegal endeavors and turning it into a criminal enterprise hiding behind a facade of justice."   Plaintiffs do not directly respond to defendants' arguments regarding predicate acts and the existence of an enterprise.

To avoid dismissal of the RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 496 (1985).  To avoid dismissal of the conspiracy claim, plaintiffs must also allege an agreement between defendants to conduct the affairs of an enterprise through a pattern of racketeering

---

[2] Plaintiff fails to cite to any authority suggesting that the Richland County Prosecutor's Office is an entity capable of being sued.

7

activity.  *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1990).

A.      Enterprise

An enterprise under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Court finds that plaintiffs do not sufficiently allege that the defendants were associated through a legal entity.[3]  Plaintiffs are thus required to plead the existence of an association-in-fact.  An association-in-fact enterprise can be proven by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged.  *VanDenBroeck v. Commonpoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000).[4]  Some minimal level of organizational structure enabling the associated persons to function as a racketeering organization for other purposes is required, including some evidence of a hierarchy.  *Id.* at 699-700.  Additionally, each associated person

---

[3]      It is apparent from the face of the complaint that plaintiffs believe that law enforcement officers, prosecutors, judges, and municipal court employees are the individuals comprising the "enterprise." Specifically, plaintiffs allege that "defendants, individually and/or as an enterprise, are an organized and existing group of individuals engaged in the business of law enforcement and/or justice." (Compl. ¶ 99).  Plaintiffs further allege that defendants were "engaged in activities as employees and/or agents of the State of Ohio and/or the County of Richland and/or the City of Mansfield, and/or the City of Shelby, Ohio."  (Compl. 101).  It is apparent from these allegations that plaintiffs are not claiming that all of the individuals were part of one legal entity.

[4]      *VanDenBroeck* was abrogated on other grounds by the Supreme Court's decision in *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).

8

must have a distinct responsibility such that there is a division of labor.  *Thermodyn Corp. v. 3M Co.,* 593 F. Supp. 2d 972, 983 (N.D. Ohio 2008).

Upon review, the Court finds that plaintiffs have not adequately pled the existence of an enterprise.  Plaintiffs fail to plead any sort of organization among the defendants.  Plaintiffs do not allege any facts concerning the decision-making structure of the organization, its hierarchy, or the division of labor within an enterprise.  Moreover, plaintiffs allege no facts showing that the alleged enterprise existed apart from its scheme to violate plaintiffs' rights.  As set forth below, plaintiffs fail to sufficiently allege a conspiracy, which is itself insufficient to state a RICO claim.  *See Thermodyn Corp.,* 593 F. Supp. 2d at 983-84 (plaintiff at most showed a simple conspiracy where it did not identify and describe how defendants organized themselves in order to carry out pattern of racketeering and failed to allege a relationship distinct from fraudulent scheme); *Urbanek v. All State Home Mortgage,* No. 1:06 CV 1279, 2006 U.S. Dist. LEXIS 81301, at *15 (N.D. Ohio Oct. 27, 2006) (allegations that defendants worked together and worked through other defendants to deceive plaintiff insufficient to establish more than a simple conspiracy).  Accordingly, plaintiffs have failed to plead the existence of an enterprise.

B.  Pattern of racketeering activity

To establish a pattern of racketeering activity, plaintiffs must allege at least two predicate acts of racketeering activity occurring within a 10-year period.  *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006).  Predicate acts may consist of offenses that are indictable under a number of state and federal statutes including mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and extortion under 18 U.S.C. § 1951.  18 U.S.C. § 1961(1).

In addition to showing two predicate acts, plaintiffs are required to show "a relationship

9

between the predicates and . . . the threat of continuing activity.  It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238 (1989).  To fulfill the relationship requirement, plaintiffs must allege that the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Moon,* 465 F.3d at 724 (citing *H.J., Inc.,* 492 U.S. at 240 (internal quotations omitted)). Plaintiffs may establish continuity by alleging either closed-ended continuity or open-ended continuity.  *Id.*  Closed-ended continuity is established by "proving a series of related predicates extending over a substantial period of time."  *Id.* at 725 (citing *H.J. Inc.,* 492 U.S. at 242 (internal quotations omitted)).  There are no firm rules as to what constitutes a substantial period of time, but the law is well-settled that racketeering activity lasting a few weeks or months and threatening no future criminal conduct is insufficient to establish continuity.  *Id.  See also Vild v. Visconsi,* 956 F.2d 560, 569 (6th Cir. 1992) (six or seven months insufficient to establish closed-ended continuity).  To show open-ended continuity, plaintiffs must allege facts showing "a distinct threat of long-term racketeering activity" or facts showing that the predicate acts "are part of an ongoing entity's regular way of doing business."  *Moon,* 465 F.3d at 727 (citing *H.J. Inc.,* 492 U.S. at 242 (internal quotations omitted)).

Even assuming that the civil rights violations alleged in the complaint could be considered predicate acts for purposes of RICO, the Court finds that plaintiffs fail to allege a *pattern* of racketeering activity.  As an initial matter, the specific allegations of wrongdoing occurred "on or about January 20, 2009."  (See Compl. ¶¶ 103-108).  Although plaintiffs generally allege that the acts either "continued until discovered by plaintiff" or "continue to the

present day," the only express actions plaintiffs allege appear to have occurred on that specific

date.  For example, it appears that plaintiffs allege that certain defendants received information

from the Veteran's Hospital regarding threats allegedly made by Shepherd on or about

November of 2008.  The search warrant, search, arrest, and seizure of Shepherd and his property

all occurred "on or about January 20, 2009."  (Id.)  Shortly thereafter, all felony charges were

dropped.  The Court finds that this period of time, which totals at most four months[5], is

insufficient to establish closed-end continuity.  With regard to open-ended continuity, the Court

finds that plaintiffs fail to show "a distinct threat of long-term racketeering activity" or that the

predicate acts "are part of an ongoing entity's regular way of doing business."  Rather, all of the

facts alleged relate to Shepherd's arrest and prosecution.  There is no suggestion that any further

illegal acts are contemplated against either Shepherd or any other alleged victims.  Rather, as

defendants correctly note, the allegations "focus on a single scheme with primary injury to a

single person."  Accordingly, plaintiffs fail to properly plead a pattern of racketeering activity.

     3.     Civil conspiracy

This Court previously concluded that plaintiffs fail to state a claim under 28 U.S.C. §

1985 because plaintiffs fail to allege that any conspiracy was motivated by racial, or other class

based animus.  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)(See Mem. of Op. and

Order, July 21, 2011).  For this reason, this claim fails as to the moving defendants as well.

     4.     Municipal liability

Defendants argue that the complaint fails to state a claim for municipal liability because

---

[5]     Although plaintiffs do complain that the misdemeanor charges
"languished" and that their property was not timely returned, the
Court does not find these allegations to constitute predicate acts.

11

the complaint does not identify a specific practice or custom that caused plaintiffs' alleged injuries.  Rather, the complaint states in conclusory fashion that the individual defendants' wrongdoing occurred as the result of an unidentified practice or custom.

In response, plaintiffs argue only that they "have alleged that a policy and customs of the government Defendants caused or contributed to the constitutional violations that they complain about in this action....  These policies and procedures are factual determinations which must be flushed out from the discovery process and further evidence which may lead to subsequent amendment of the pleadings."

Upon review, the Court finds that plaintiffs fail to state a claim for "municipal liability." A municipality cannot be found liable for deprivation of a constitutional right unless a plaintiff can establish that an officially executed policy or the toleration of a custom within the municipality deprived the plaintiff of that right.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  A "custom" must be "so permanent and well-settled as to constitute a custom or usage with the force of law" such that  it is a "deeply embedded traditional way[] of carrying out state policy."  *Monell*, 436 U.S. at 691; *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 269 (1940).  A custom must "reflect a course of action deliberately chosen from among various alternatives," and in essence be "a legal institution not memorialized by written law."  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985); *Claiborne*, 103 F.3d at 508.  A plaintiff suing a municipality for a constitutional violation under § 1983 must allege that the municipality's policy or custom caused the alleged injury.  *Monell*, 436 U.S. at 690-691; *Claiborne*, 103 F.3d at 507.

Defendant argues that plaintiff fails to identify any unconstitutional policy or custom that

12

was the driving force behind a violation of plaintiff's constitutional rights

Upon review, the Court finds that plaintiff fails to state a claim for "municipal liability." In this case, plaintiffs fail to identify a practice or custom that allegedly caused the injury.  As an initial matter, plaintiffs' brief in opposition fails to refer to the complaint or the actual allegations contained therein.  Rather, plaintiffs simply argue that discovery is needed to "flush out" the "policies and procedures," at which point, plaintiffs will amend their complaint.  Discovery, however, may be not be used as a fishing expedition.  Rather, a plaintiff must have a good faith basis and sufficient factual support to state a claim *before* discovery ensues. Although not discussed by plaintiffs, the complaint contains the following allegations regarding "municipal liability,"

> 121.   The violation of Plaintiffs' constitutional and civil rights as described herein was the direct result of the Defendant City's, County's, and/or State's custom(s), practice(s) and/or policy(ies) in that their officer(s), agent9s) [sic], and employee(s) were inadequately trained and/or supervised and have been directed pursuant to the persistent action, practice, and/or policies written and/or defacto of the City, County, State that the officers and employees would be immune from discipline, reprimand, and/or prosecution for violating the constitutional and/or civil rights of the Citizens of Ohio.
>
> 122.   Because of its policies, procedures, patterns, practices, and/or customs including but not limited to training, supervision, investigation and discipline of their officers and employees, the City, County and/or State is liable to Plaintiffs pursuant to 42 U.S.C. § 1983, et seq.

The allegations do not, however, differentiate between various "municipal" defendants. Rather, the complaint speaks generally to the policies and practices of the "City, County, and/or State," without identifying a particular policy adopted by any particular entity.  Moreover, these allegations are directed broadly at the "training, supervision, investigation, and discipline" of employees.  The only allegation that comes close to identifying a particular policy is contained in

13

Paragraph 121, in which plaintiffs allege that the employees were "directed" that they would be "immune from discipline, reprimand, and/or prosecution" for their actions.  Again, however, this allegation does not identify a particular "municipal" defendant and, instead is aimed at the "City, County, and/or State."  The Court finds that, by failing to identify a particular custom and practice and tie it to a particular defendant, plaintiffs have not satisfied the pleading standards set forth by the Supreme Court in *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009).  Accordingly, plaintiffs fail to state a claim for "municipal liability."

     5.     First Amendment

Defendants argue that the complaint fails to state a First Amendment claim.  According to defendants, other than using the terms "Freedom of Speech" and "Freedom of Association," plaintiffs do not identify any conduct protected by the First Amendment.  Rather, the allegations directed at the moving defendants relate solely to plaintiff's arrest and subsequent court proceedings, as well as the search of plaintiff's residence.   In response, plaintiffs argue that the "details of the actions taken by the Defendants are set forth fully."  Plaintiffs, however, fail to cite to the complaint.  Rather, plaintiffs simply argue that defendants had a concerted plan to "have Mr. Shepherd labeled as crazy and to ultimately deny or stifle the Plaintiffs from free expression and association as it related to their problems with the Legal [sic] system in Richland County...."

Upon review, the Court finds that plaintiffs fail to state a claim against the moving defendants for violation of the First Amendment.  Simply put, plaintiffs fail to identify any conduct whatsoever that they engaged in that is protected by the First Amendment.  Accordingly, dismissal is warranted.

14

6.     Second Amendment

Defendants argue that plaintiffs do not have a cognizable Second Amendment claim. According to defendants, a Second Amendment claim is not available where the seizure of weapons occurred pursuant to a warrant.  Rather, the only cognizable claim arises under the Fourth Amendment.  Defendants also argue that there is no Second Amendment claim for the seizure of specific firearms, as occurred in this case.   In response, plaintiffs argue that no probable cause existed to support the search warrant.  According to plaintiffs, defendants refused to return the weapons even after they knew "that they could not support a weapons under disability charge and after the charge was dismissed by the Shelby Municipal Court."   Plaintiffs argue that the charge of weapons under a disability was filed for the purpose of preventing plaintiffs from acquiring *any* weapon.  In reply, defendants point out that plaintiffs fail to cite to any paragraph in their complaint wherein they allege that the weapons under a disability charge was instituted to prevent plaintiffs from acquiring *any* weapon.  According to defendants, a "weapons under disability" charge does not prevent an individual from acquiring a weapon.

Upon review, the Court agrees with defendants.  This claim is more properly analyzed under the Fourth Amendment, as the validity of the search and seizure will determine plaintiffs' entitlement to the weapons.  Accordingly, the claim is dismissed.

7.     Due Process

Defendants move to dismiss this claim on the grounds that plaintiffs fail to identify what procedural right was violated or identify the defendants who allegedly violated any such right. According to defendants, to the extent plaintiffs are attempting to state a due process claim based on the arrest, search warrant, or prosecution, this is improper under Sixth Circuit law.  According

15

to defendants, the same holds true to the extent plaintiffs' claim is for the violation of substantive

due process.  In response, plaintiffs again fail to cite to any portions of their complaint.  Rather,

with regard to procedural due process, plaintiffs argue only that,

> Plaintiffs were afforded no due process protections in the search of their home, seizure
> and retention of their property, the criminal process with respect to Randy Shepherds
> [sic] arrest, detention, without bail and without a court hearing, prosecution and
> ultimately their right to pursue without fear of reprisal, their various battles with the
> Richland County legal system.

The Fourteenth Amendment's Due Process Clause prohibits states from depriving any

person of life, liberty, or property without due process of law.  *U.S. Const. amend. XIV.*

Procedural due process requires that prior to a state terminating a protected interest, the state

must give notice and an opportunity for a hearing.  *Club Italia Soccer & Sports Org., Inc., v.*

*Charter Twp. of Shelby, Mich.,* 470 F.3d 286 (6th Cir. 2006).   Due process of law, however,

does not guarantee any specific type of procedure.  *Mitchell v. W.T. Grant Co.,* 416 U.S. 600,

610 (1974).  Instead, "due process is flexible and calls for such procedural protections as the

particular situation demands."  *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) (internal

quotations omitted).  *See also Neinast v. Bd. of Tr. of Columbus Metro. Library,* 346 F.3d 585,

597 (6th Cir. 2003).

With regard to plaintiffs' procedural due process claim, the Court finds that plaintiffs fail

to state a claim against the moving defendants.  As defendants correctly note, a procedural due

process claim does not arise where the wrongful conduct occurred incident to an arrest without

probable cause.  *See*, *Wilson v. Morgan*, e.g., 477 F.3d 326, 333 (6th Cir. 2007).  To the extent

plaintiffs purport to assert a procedural due process claim outside the context of the Fourth

Amendment claim, the Court finds that plaintiffs fail to tie any particular procedural due process

16

violation to any particular defendant.  Nor do plaintiffs purport to identify any policy which

would result in a procedural due process violation.

As to substantive due process, plaintiffs argue,

...[T]he claims are not limited to unlawful arrest, search, and prosecution.  Rather, the Defendants are all implicated in the violation of the Plaintiffs [sic] Constitutional rights....  The Complaint specifically alleges that The [sic] Defendants authorized, conspired with, aided, allowed, ratified, furthered and/or acquiesced with one, or some, or all of the other Defendants...in order to attempt and/or cause to violate the civil rights of [plaintiffs].

The Fourteenth Amendment's Due Process Clause has a substantive due process

component that "protects specific fundamental rights of individual freedom and liberty from

deprivation at the hands of arbitrary and capricious government action."  *Sutton v. Cleveland Bd.*

*of Ed.,* 958 F.2d 1339, 1350 (6th Cir. 1992) (internal quotations omitted).  Substantive due

process protects only those interests "so rooted in the traditions and conscience of our people as

to be ranked as fundamental."  *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir. 1990) (citing

*Michael H. v. Gerald D.,* 491 U.S. 110 (1989)).  An "arbitrary and capricious" action is one that

shocks the conscience.  *Bowers v. City of Flint,* 325 F.3d 758, 763 (6th Cir. 2003) (citing *County*

*of Sacramento v. Lewis,* 523 U.S. 833 (1998)).

Upon review, the Court finds that plaintiffs fail to state a claim for violation of

substantive due process that is not already encompassed in plaintiffs' Fourth Amendment claim.

Accordingly, the claim is dismissed.

8.      *Bivens* claim

Plaintiffs purport to allege a clam against defendants pursuant to *Bivens v. Six Unknown*

*Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Bivens* affords a

plaintiff with the right to pursue alleged constitutional violations against federal officials.  It is

17

undisputed that none of the moving defendants are federal actors. Plaintiffs claim that, to the extent a conspiracy is alleged against federal actors and the moving defendants, then the moving defendants are liable under *Bivens*. This Court previously dismissed the federal defendants and concluded that no such conspiracy is properly alleged in the complaint. Accordingly, plaintiffs' *Bivens* claim fails.

　　　　9.　　*McGhee* claim

　　　　Plaintiffs purport to assert a claim under *McGhee v. Pottawattamie Cty.*, 547 F.3d 922 (8th Cir. 2008). McGhee holds that prosecutorial immunity does not extend to prosecutors who, "violated a person's substantive due process rights by obtaining, manufacturing, coercing and fabricating evidence before filing formal charges," as these functions are not "distinctly prosecutorial."

　　　　Defendants argue that the complaint contains no allegations consistent with liability under *McGhee*. According to the defendants, the allegations in the complaint appear to relate to the prosecutors' actions and conduct during hearings. In response, plaintiffs claim that the complaint alleges that the prosecutors conspired with other defendants. According to plaintiffs, the complaint alleges that the prosecutors encouraged the law director to retain plaintiffs' weapons even after all charges were dismissed. Plaintiffs also argue that the complaint expressly alleges that the prosecutors conspired with other defendants by "participating in the investigative phase of the proceedings."

　　　　Upon review, the Court finds that plaintiffs' *McGhee* claim must be dismissed. In plaintiffs' complaint, they expressly allege that the prosecutors "individually and/or jointly fabricated evidence against the Plaintiffs jointly or individually." (Compl. ¶ 145). Plaintiffs fail

to cite to any factual allegations supporting this legal conclusion.  Having reviewed the complaint, the Court finds that plaintiffs do not allege sufficient facts supporting their conclusory allegation that the prosecutors "fabricated evidence."  As such, the claim must be dismissed.

> 10.    Defendant Dalbey

Defendant Dalbey is a Magistrate Judge in the Richland County Court of Common Pleas.  Defendant argues that he is entitled to absolute immunity from suit.  In response, plaintiffs argue that Judge Dalbey acted outside the scope of capacity as a Magistrate Judge and acted without jurisdiction.[6]  These are the same arguments raised by plaintiffs in opposition to the motion to dismiss filed by Judges DeWeese and Henson.  This Court thoroughly addressed and rejected these arguments in its Memorandum of Opinion and Order dated April 12, 2011.  For the reasons stated therein, Magistrate Judge Dalbey is also entitled to absolute immunity.  Accordingly, all claims against this defendant are dismissed.

> 11.    Prosecutor defendants

Defendants Mayer, Tunnel, Bishop, Robinson and Kvochich are prosecutors for Richland County.  These defendants argue that they are entitled to absolute immunity with respect to the claims set forth in the complaint.  According to defendants, all alleged wrongdoing occurred as part of the "judicial process."  In response, plaintiffs argue only that,

> The Complaint sufficiently alleges that The [sic] Defendants [sic] Prosecutors were acting outside of their official capacity, and/or in their individual capacity, and/or during the investigative phase of a case wherein immunity does not attach.  The Complaint alleges that these Defendants engaged in a campaign to Have [sic] Randy Shepherd labeled as 'crazy' and included him in a de fact [sic] blacklist of persons involved in disputes with the Richland County Legal [sic] system.

---

[6]    Plaintiffs do not dispute that magistrate judges are entitled to the same immunity as common pleas judges.

Upon review, the Court finds that these defendants are absolutely immune from suit based on the allegations in the complaint.  The specific allegations of wrongdoing occurred as part of the "judicial process."  Specifically, plaintiffs allege that defendant Bishop requested that a hearing be denied and that Bishop requested a competency hearing even though he knew Shepherd was competent.  Plaintiffs further allege that Bishop falsely represented facts to the Court regarding plaintiff's mental health.   All of these actions, however, occurred in the context of court proceedings.  As such, the Court finds that defendant Bishop is entitled to absolute immunity for these actions.  No specific facts are alleged regarding the other prosecutor defendants.

Plaintiffs argue that certain acts occurred during the "investigatory phase," for which absolute immunity does not apply.  Plaintiffs fail to point to any specific allegation.  However, this Court reviewed the complaint and notes the following allegation,

> Defendant # 8, Christopher Tunnel....  knew that the facts as alleged against Plaintiffs...were malicious and/or false, and acted/failed to act according to the law, when he caused an illegal search warrant to be issued at the home of the Plaintiffs, and caused criminal charges to be unlawfully brought against Plaintiff #1, Randy Shepherd, and/or with knowledge that the criminal charges were spurious continued to cause such spurious charges to be brought..., and/or caused an unreasonable bond to be sought and set imprperly..., all of which resulting [sic] in his denial of bond and/or bail, the denial of due process..., the seizure and detention and/or [sic] their property.....

It appears that plaintiffs attempted to make this allegation against each of the prosecutor defendants.  For example, Paragraph 81 of the Complaint begins by identifying defendant Robinson as "Defendant #10," and an employee of the Richland County Prosecutor's Office. Yet, the remainder of Paragraph 81 contains the aforementioned allegation, which is directed at "Defendant #8."  There is a similar paragraph with respect to each defendant, yet the primary allegation is directed only at "Defendant #8."  Thus, it is unclear whether plaintiffs are alleging

20

that all of the prosecutor defendants were involved in this alleged wrongdoing (and thus an error appears in the complaint), or whether plaintiffs intended to repeatedly allege this wrongdoing only with respect to "Defendant #8," *i.e.*, defendant Tunnel.

The Court finds that the majority of this allegation relates to the acts covered by absolute immunity.  The assertion and continuance of criminal charges, as well as the setting of bond, are all acts within the "judicial process."  Moreover, the Court finds that the Complaint fails to state a claim against the prosecutor defendants for events surrounding the issuance of the search warrant.  As it stands as written, there are no allegations concerning the search warrant directed at any defendant other than defendant Tunnel.  With regard to defendant Tunnel, there are no allegations as to what defendant Tunnel did to "cause a search warrant to be issued."  This is especially problematic in light of the fact that plaintiffs expressly allege that defendant Bosko submitted a false affidavit and that Judge Henson signed the warrant.[7]  Thus, the Court finds that the complaint fails to state a claim against the prosecutor defendants for alleged wrongdoing surrounding the issuance of the search warrant.  With regard to all other alleged wrongdoing, the Court finds that the prosecutor defendants are entitled to absolute immunity.

12.     Defendant Sheldon

Defendant Sheldon is the Sheriff of Richland County.  (Compl. ¶ 52).  Defendant Sheldon argues that plaintiffs fail to state any individual capacity claims against him because there are no allegations of wrongdoing directed at him.  In response, plaintiffs argue that they

---

[7]     As defendants note, plaintiffs allege that the prosecutor defendants "conspired" during the "investigatory phase" of the matter.  These allegations are merely legal conclusions, for which plaintiffs fail to provide any supporting facts.

have alleged that defendant Sheldon failed to properly supervise, train and/or discipline defendant Bosko.      Upon review, the Court finds that the individual capacity claims against defendant Sheldon must be dismissed because plaintiff fails to allege any personal involvement in the alleged wrongdoing.  The arguments raised by plaintiffs implicate official capacity claims, which this Court previously determined were not properly pled.  Accordingly, defendant Sheldon is dismissed.

### **CONCLUSION**

For the foregoing reasons, Defendants J. Steve Sheldon, Eric Bosko, Gary Dalbey, James Mayer, Jr., Christopher Tunnell, Gary Bishop, Brent Robinson, Andrew Kvochich Richland County Sheriff's Department, and the Richland County Prosecutor's Office's Motion for Judgment on the Pleadings is GRANTED.  With regard to the moving defendants, the sole remaining defendant is defendant Bosko and the sole remaining claim against this defendant is Count Three.

IT IS SO ORDERED.


/s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
Date:  8/15/11                     United States District Judge