UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Randy Shepherd,** *et al.*, | ) | CASE NO. 1: 11 CV 127 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| **J. Steve Sheldon,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

The Court has previously dismissed all of the claims in this civil rights case at the pleadings stage except for Count III against Defendant Eric Bosko in his individual capacity. Defendant Bosko now moves for summary judgment on this remaining claim. (Doc. 59). For the reasons stated below, the motion is granted.

**Facts**

Plaintiffs Randy and Cynthia Shepherd brought this action against nine defendants alleging conspiracy and civil rights claims arising from the following facts. In 2004, Shepherd represented himself *pro so* in child support and custody litigation with the Richland County, Ohio Child Support Enforcement Agency. Frustrated with the course of the

1

proceedings, Shepherd sought mental health treatment at the United States Department of Veterans Affairs (VA).  Plaintiffs allege that, in dereliction of their duties as medical personnel, defendants Julie Berg and/or Lisa Salser, agents for the VA, disclosed to Richland County Court of Common Pleas Judge James DeWeese confidential and privileged information obtained during Shepherd's treatment, including that Shepherd made threats against Judge DeWeese and others in Richland County involved in his child custody and support proceedings.  Plaintiffs alleges that DeWeese, in turn, caused the information about him to be further disseminated to other defendants, namely, "the Richland County, Ohio Probation Officer, Dan Myers, the Mansfield Police Department and ultimately to Defendant Eric Bosco of the Richland County, Ohio Sheriff's Office."  (Complt., ¶ 4.)

Plaintiffs allege that, as a result of the dissemination of the confidential information, an illegal search warrant was issued to search Shepherd's home for weapons and evidence of a plot by Shepherd against DeWeese and others.  Plaintiffs allege that Bosco provided a false affidavit in support of the illegal search warrant.  (*See* Complt., ¶¶ 30-37.)  Bosco is a captain with the Richland County Sheriff's Department with 23 years of law enforcement experience.  (Bosco Aff., Ex. 1 to Def. Mem., ¶¶ 2, 3.)  On January 20, 2009, Bosco began an investigation regarding Shepherd as a result of a call he received from Judge DeWeese's bailiff in which the bailiff advised Bosco that Shepherd had made death threats against Judge DeWeese and others.  In investigating Shepherd, Bosco reviewed a "Mental Health Counseling Note" regarding Shepherd prepared by Julie Berg of the VA and acknowledged by Lisa Salser, as well as a Mansfield Police Department Report regarding Shepherd (Police Report Number 1-08-037699).  In addition, Bosco states that he also made telephone contact with Lisa Salser at

the VA as part of his investigation.  (Bosco Aff., Exs. 1 and 2.)

After conducting his investigation, Bosco drafted a search warrant affidavit on January 20, 2009, which stated:

> 4.  On November 11, 2008 the suspect: Randy Shepherd, called the Suicide Helpline and stated that he wanted to harm certain people.
>
> 5.  On November 13, 2008 the suspect: Randy Shepherd, attended a mental health counseling at the Veteran's Affairs located at 1456 Park Avenue West Mansfield, Ohio.  During the counseling session the suspect: Randy Shepherd, stated that he had anger issues with the local legal system.  Suspect stated this stemmed over child support issues.  Suspect stated he has a plan to harm person(s) that are involved in the legal profession.  Suspect stated he wants to harm Richland County Common Pleas Judge Deweese and Judge Ron Spon, Mansfield Municipal Court Judge Jeff Payton and Magistrate Don Teffner as well as Attorney Kelly Lucas from Child Support.  Suspect stated he has a plan and it would likely be a good chance that he will carry-out his plan.  Suspect stated he refuses to take medications to help his mood and anger.  Suspect admits to possessing firearms in his home.  Suspect agrees to voluntarily being transported [to] Medcentral for further psychiatric evaluation to stop his thoughts about killing people.  Suspect's "Risk Assessment" from the Veteran's Affairs personnel is that suspect has a high risk of harming people.  Evaluation states the suspect needs additional evaluation because of homicidal thoughts.
>
> 6.  On November 13, 2008 the Mansfield Police Department conducted a criminal investigation in regards to the suspect:  Randy Shepherd's, threats and statements of killing Judge Deweese, Judge Spon, Judge Payton, Magistrate Teffner and attorney Lucas.  The Mansfield Police Department completed a "Menacing" offense report (see MPD G.O. #08-37699).
>
> 7.  On November 13, 2008 the suspect:  Randy Shepherd, was transported to Medcentral ER for psychiatric evaluation.  The suspect was then transported involuntarily to Brecksville Psychiatric Hospital where he was involuntarily committed for psychiatric evaluation and treatment.
>
> 8.  On January 14, 2009 the suspect:  Randy Shepherd, attended another mental health counseling session at the Veteran's Affairs located at 1456 Park Avenue West Mansfield, Ohio.  The suspect stated he was still angry, but denied homicidal thoughts.  Suspect stated he was going to seek punitive damages against the legal system of $96 million dollars.  Suspect stated he was not taking any medications for his diagnosis and thoughts.  Suspect stated he has

> three (3) alcoholic drinks a week and smokes marijuana on occasion. Suspect stated he has firearms in his home.
>
> 9. On January 20, 2009 information was received that the suspect: Randy Shepherd, had been at the Richland County Clerk of Courts and made threats stating "That is why people blow up buildings". The verbal statements made drew attention from the staff and the staff stated they would call the Sheriff's Office should he persist. The suspect's statements occurred within this last year 2008.
>
> 10. On January 20, 2009 contact was made with the Richland County Prosecutor's Office and upon review of the facts the Prosecutor's Office stated the suspect: Randy Shepherd, was unable to possess firearms per ORC 2923.13 as he had been involuntarily committed to a mental institution from the November 13, 2008 incident.
>
> 11. Upon conducting a history check of the suspect: Randy Shepherd, with the Richland County Sheriff's Office it was found that he was involved in an incident where he handcuffed his daughter in May 3, 2003 and possible abuse occurred naming the suspect. Also, in March 26, 1996 where the suspect had reportedly assaulted his child. *See* RCSO #03-2329 and #96-5740.

(Bosco Aff., Ex. 3.)

Plaintiffs contend Bosco's statements in (paragraphs 7 and 10) of the search warrant affidavit that Shepherd was "involuntarily" committed to a mental institution are false. There is no dispute on summary judgment that Shepherd was not "involuntarily" committed to a mental institution. Neither the Mental Health Counseling Note nor the Mansfield Police Department Report regarding Shepherd reviewed by Bosco in his investigation state that Shepherd was "involuntarily" committed to a mental health facility. Indeed, the Mental Health Counseling Note indicates that the patient was transport to MedCentral for further evaluation voluntarily. In addition, Lisa Salser has provided responses to a "deposition upon written questions" in the case stating that she did not tell Bosco or any other law enforcement agency or court officer that Shepherd had been "involuntarily committed to a mental health

4

facility or hospital." (Def. Mem., Ex. 3.)

Bosco states in his affidavit in support of his motion for summary judgment, however, that it was his "recollection and impression" from the conversations he had with Lisa Salser that Shepherd was involuntarily committed to the VA hospital in Brecksville after Shepherd had been evaluated at MedCentral. (Bosco Aff., ¶ 14.) Bosco states: "Ms. Salser told me that after the evaluation at MedCentral, Mr. Shepherd was transported to a VA hospital in Brecksville for further psychiatric evaluation. My recollection and impression based on my conversations with Ms. Salser was that Mr. Shepherd was involuntarily committed to the VA hospital in Brecksville." Bosco acknowledges in his affidavit that Salser told him that Shepherd was initially transported to MedCentral for evaluation voluntarily. (*Id*. at ¶ 13.)

Richland County Court of Common Pleas Judge James Henson issued a warrant to search plaintiffs' home for firearms, firearm components, ammunition, documentation relating to plans/designs to carry out homicidal threats, explosives and or components, and illegal narcotics (marijuana and paraphernalia) on the basis of Bosco's search warrant affidavit. Plaintiffs' home was searched pursuant to the warrant on January 20, 2009. Marijuana, drug paraphernalia, and weapons were found during the search. Shepherd was subsequently charged with possession of marijuana and drug paraphernalia (a misdemeanor) and the felony of possessing a weapon under a disability. Plaintiffs assert and Bosco does not dispute that the felony charge of possessing a weapon under a disability was dismissed at the preliminary hearing stage. (*See* Ex. 2 to Def. Mem. at p. 3.) Therefore, a felony prosecution did not proceed against Shepherd. The misdemeanor charge of possession of marijuana and drug paraphernalia proceeded, but plaintiffs state in their opposition brief (and Bosco does not

5

dispute) that "the marijuana charges . . . were also [ultimately] dismissed, like the felony charges, without a full hearing" although it is not clear from the parties' briefs when and on what basis the misdemeanor possession charge was dismissed.  (Opp. at 5.)

Plaintiffs' sole remaining claim in this case is that Bosco is liable under the Fourth Amendment and 42 U.S.C. § 1983 because he provided false information in the search warrant affidavit that Shepherd was involuntarily committed to a mental institution.[1] Plaintiffs contend Bosco made false statements as to the felony (possessing a weapon under a disability) which provided the basis for the search warrant.  (*See* Plaintiffs' Brief in Opp. at 1-2, 4.)

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that

---

[1] Although plaintiffs allege in Count III of the complaint that Bosco's conduct in providing false information violated their rights to due process and equal protection, plaintiffs make clear in their opposition brief that their claim against Bosco is based on the Fourth Amendment.  *See* Pltf. Opp. at 1 ("The sole remaining claim in this case is the individual Fourth Amendment Claim against Defendant Eric Bosko.").

an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986). In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

**Discussion**

It is well-established that an officer may be liable for violating the Fourth Amendment when he "knowingly and deliberately, or with reckless disregard for the truth makes false statements or omissions that create a falsehood and such statements or omissions are material, or necessary, to the finding of probable cause." *Peet v. City of Detroit*, 502 F.3d 557, 570 (6th Cir. 2007) (internal quotation omitted). *See also Johnson v . Hayden*, Case Nos. 01-3661, 02-3585, 67 Fed. Appx. 319, 2003 WL 21321087, at *4 (6th Cir. June 6, 2003) ("a government investigator is liable for violating the Fourth Amendment when he deliberately or recklessly submits false and material information in a warrant affidavit"). "[F]alsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional." *Peet*, 502 F.3d at 570 (citing *Hinchman v. Moore*, 312 F.3d 198, 205-06

(6th Cir. 2002)). "When an affidavit contains false statements or material omissions, the question becomes whether, once the false statements are omitted and the omitted facts are inserted, the 'corrected affidavit' is still sufficient to establish probable cause." *Peet*, 502 F.3d at 570. A Fourth Amendment violation exists if, with the affidavit's false material set aside, the affidavit's remaining content is insufficient to establish probable cause. *Id*. at 571.

Further, when a plaintiff brings a § 1983 claim alleging false or omitted statements in a search warrant affidavit, the standard for qualified immunity is governed by *Franks v. Delaware*, 438 U.S. 154 (1978). *See Johnson v . Hayden*, 67 Fed. Appx. 319, 2003 WL 21321087, at *4 (6th Cir. June 6, 2003). "To overcome the investigator's entitlement to qualified immunity . . . a plaintiff must establish:  (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Johnson*, 2003 WL 21321087, at *4.

Plaintiffs contend a Fourth Amendment violation exists here because when the false information contained in Bosco's affidavit (the statements that Shepherd was "involuntarily" transported and committed to a mental health facility) is set aside, probable cause is lacking for the only crime identified in the search warrant affidavit, that Shepherd "was unable to possess firearms per ORC 2923.13 as he had been involuntarily committed to a mental institution from the November 13, 2008 incident." (*See* Paragraph 10 of the search warrant affidavit.)

Bosco moves for summary judgment on plaintiffs' Fourth Amendment claim on the basis of collateral estoppel and qualified immunity.

8

*Collateral Estoppel*

Federal courts must apply state collateral estoppel when determining whether a state court's judicial determination has preclusive effect in a Section 1983 action. *Haring v. Prosise*, 462 U.S. 306, 313 (1985). Under Ohio law, issue preclusion exists when four elements are present: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. *Brady v. Brady*, No. 19006, 2002 WL 626963, at *3 (Ohio App. April 19, 2002). The burden of pleading and proving collateral estoppel rests with the party seeking estoppel.

Bosco's first argument is that plaintiffs' Section 1983 claim against Bosco is barred by collateral estoppel because the state municipal court that presided over Shepherd's misdemeanor drug possession case ruled, after Shepherd made a motion to suppress evidence in the case, that the search warrant was supported by probable cause for purposes of the misdemeanor drug charge. (*See* Judgment Entry, Ex. 2 to Def. Mem.) Bosco argues that the "constitutionality of the search warrant was actually and directly litigated" in this suppression hearing and that the "state court ruled that the search warrant was supported by probable cause"; therefore, plaintiffs "are estopped from bringing a claim under the Fourth Amendment or state law that the warrant authorizing a search of their property was not based on probable cause." (Def. Mem. at 6-7.) Bosco cites authority supporting the general proposition that plaintiffs are barred from re-litigating in a subsequent § 1983 action a probable cause

9

determination made in prior state court criminal proceeding.  (*See* Def. Mem. at 6-8.)

Plaintiffs contend the municipal court's ruling does not bar their Section 1983 claim for several reasons.  First, plaintiffs argue the municipal court ruling pertained only to the misdemeanor drug charge, but the "falsity of the statements [in Bosco's search warrant affidavit] relating to the felony charge of weapons under disability was NEVER even addressed in the misdemeanor proceeding" because the weapons under disability charge against Shepherd had been previously dismissed.  (Opp. at 5-6.)  Second, plaintiffs argue they did not have a full and fair opportunity to challenge Bosco's false statements "relating to the felony offense of possessing weapons under a disability" in the misdemeanor drug case.  (Opp. at 5.)  They argue a full and fair opportunity did not exist because the VA employees refused to comply with subpoenas and appear and testify in the state court hearing and, in addition, the plaintiffs did not have an opportunity to challenge the municipal court's ruling as the misdemeanor charges, like the weapons under disability charge, were dismissed.  (Opp. at 7.)[2]

Plaintiffs' position is persuasive that collateral estoppel should not be applied to bar plaintiffs' claim against Bosco.  Although Bosco correctly asserts that the state municipal court found the search warrant supported by probable cause – and upheld the warrant – for purposes of the misdemeanor drug possession charge brought against Shepherd, Bosco has

---

[2]

Plaintiffs contend the state court's ruling that the warrant was supported by probable cause is erroneous given that the sole basis asserted for searching plaintiffs' home in the search warrant affidavit was that Shepherd possessed a weapon under a disability.  The affidavit did not allege facts sufficient to conclude that marijuana or drug paraphernalia would be found at plaintiffs' home.  In addition, the search warrant was not based on statements by Shepherd that he intended to kill Judge DeWeese or others.  (*See* Opp. at 8-11.)

10

not demonstrated that the municipal court's probable cause determination in the drug case involved the same issue involved in plaintiffs' present Section 1983 claim (*i.e.*, whether Bosco's statements in the search warrant affidavit that Shepherd was "involuntarily" committed to a mental hospital were false such that probable cause did not exist for the felony of possessing a weapon under a disability, the crime identified in Bosco's affidavit as the basis for a search warrant). Indeed, the municipal court expressly stated that Bosco's alleged inaccurate statement as to Shepherd's involuntary commitment was not relevant to its probable cause determination in the drug possession case. The court stated: "[T]he inaccurate statement as to the involuntary commitment has nothing to do with the possession or marijuana and/or drug paraphernalia charge." (Judgmt. Entry at 4.) *See also* Judgment Entry at 3 ("The fact that the Defendant had not been involuntarily committed to a mental hospital is not relevant as to the drug case."). The municipal court found that Shepherd failed to overcome his burden of establishing that Bosco deliberately or recklessly made false statements in order to obtain the search warrant and that probable cause existed for the drug charge even if the alleged false "statements at issue were excluded." (*Id*. at 4.) But the municipal court did not consider or decide whether probable cause existed for the felony of possessing a weapon under a disability, either considering or excluding Bosco's alleged false statements. In short, the municipal court did not consider an "identical" issue to the issue raised in Shepherd's present § 1983 claim.

Plaintiffs' argument is also persuasive that collateral estoppel should not apply because it cannot be said that Shepherd had a "full and fair" opportunity, in the context of the suppression hearing in the misdemeanor drug case, to litigate whether a Fourth Amendment

11

violation occurred as a result of false statements by Bosco in the search warrant affidavit as to the felony of possessing a weapon under a disability.  Bosco asserts in his reply brief that Shepherd is barred from challenging probable cause in this case because Shepherd had the opportunity to challenge probable cause in the drug suppression case and the municipal court found that probable cause existed for the search.  However, Bosco does not refute plaintiffs' assertions in their opposition brief that Shepherd did not have access to the key VA witnesses in the state court proceeding and could not challenge the state court's determination because the drug charges were also dismissed.  Further, as noted above, the state municipal court did not consider the alleged false statements relevant in its analysis.  Thus, Bosco has not demonstrated the second element necessary for  collateral estoppel to apply, that there was a "final" judgment on the merits in a previous case after a "full and fair opportunity" to litigate the issue in question.

For all of these reasons, summary judgment is not warranted on the basis of collateral estoppel.

*Qualified Immunity*

Alternatively, Bosco argues that he is entitled to summary judgment on the basis of qualified immunity.  First, Bosco argues that "there is no evidence that [he] knowingly and deliberately, or with a reckless disregard for the truth made false statements or omissions that created a falsehood when drafting the search warrant affidavit."  (Def. Mem. at 9-10.)  Bosco argues that, even if his "understanding" (based on his conversations with Lisa Salser) that Shepherd was "involuntarily transported to the Brecksville Psychiatric Hospital" was incorrect, plaintiffs present "no evidence through discovery or otherwise which shows that

[he] knowingly, deliberately or recklessly disregarded the truth." (Def. Mem. at 11.)

However, plaintiffs point to evidence in their opposition brief sufficient to create at least a material issue of fact as to whether Bosco intentionally or recklessly falsely stated that Shepherd was "involuntarily" committed to the Brecksville VA hospital in his search warrant affidavit. First, plaintiffs point out that none of the documents Bosco reviewed and relied upon in conducting his investigation state that Shepherd had been "involuntarily" transported or committed to any mental health facility. To the contrary, the VA's Mental Health Counseling Note reviewed by Bosco and initialed by Lisa Salser states on its face that Shepherd was "agreeable" to being sent to the hospital for evaluation in connection with his homicidal thoughts and that he was transported to MedCentral voluntarily. (Def. Mem., Ex. 1.) Likewise, the Mansfield Police Department Report Bosco reviewed also does not state that Shepherd was transported to MedCentral or any other facility "involuntarily" (but simply states that Shepherd was "sent" to MedCentral and was subsequently "moved" to another health facility). (*See* Def. Mem., Ex. 2.)

In addition, although Bosco states in his affidavit in support of his motion for summary judgment that he concluded from the conversations he had with Salser that Shepherd was involuntarily committed after Shepherd was evaluated at MedCentral, plaintiffs point out that Bosco provided this affidavit only after Lisa Salser provided her discovery responses denying that she advised anyone that Shepherd had been "involuntarily" committed. Plaintiffs point out that, prior to Salser's written deposition response, Bosco previously and unequivocally asserted that Salser told him that Shepherd had been involuntarily committed. (*See* Opp. at 14, citing testimony by Bosco at the preliminary

13

hearing in the state court proceeding and a memorandum drafted by Bosco to the Shelby Law Director, attached as Exs. Plaintiffs' Brief in Opp.)   Plaintiffs contend Bosco's changing positions as to what Lisa Salser told him is further evidence that Bosco made intentionally false or reckless statements in his search warrant affidavit that Shepherd was involuntarily committed.

Plaintiffs' arguments are persuasive that the documents Bosco reviewed in his investigation, and the evidence of Bosco's changing explanations of his conversations with Salser, are sufficient to create at least a genuine issue of material fact as to whether Bosco made a false representation in his search warrant affidavit deliberately or with reckless disregard for the truth.  A reasonable jury could find on the basis of the evidence plaintiffs cite that Bosco, an experienced police officer, had obvious reasons to doubt the accuracy of the information he reported in his search warrant affidavit that Shepherd had been "involuntarily" committed to the VA hospital.  Plaintiffs have satisfied their burden on summary judgment of coming forward with evidence to demonstrate that Bosco stated a deliberate falsehood or recklessly disregarded the truth in stating that Shepherd was involuntarily transported and committed to the VA hospital in Brecksville.

Bosco's last argument in support of his motion for summary judgment is that he is entitled to qualified immunity because, even if Shepherd's commitment was voluntary and his statements in the search warrant affidavit that Shepherd was involuntarily committed were knowingly or recklessly false, "there was still probable cause for the search warrant to issue" under Ohio Revised Code § 2923.13; therefore, Bosco is entitled to qualified immunity because his false statements are not material to a probable cause finding that Shepherd

possessed a weapon under a disability.[3]  Bosco reasons that, under Ohio's weapons under a disability statute, it does not matter whether a person is "voluntarily" or "involuntarily" committed to a mental institution to be guilty of the felony of possessing a weapon under a disability.  Rather, a person is guilty of the crime simply when he is "committed" to a mental institution, voluntarily or otherwise.

> Ohio's weapons under a disability statute provides in pertinent part:
>
> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
> . . .
> (5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, *has been committed to a mental institution*, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

Ohio Revised Code § 2923.13 (emphasis added).

To support his position that the language "has been committed to a mental institution" as used in the statute does not require involuntary commitment, Bosco relies on *Pivar v. Summit County Sheriff*, 170 Ohio App.3d 705 (Ohio App. 2006).  The plaintiff in *Pivar* applied to the Summit County Sheriff's Office for a concealed handgun permit.  Pursuant to Ohio Revised Code § 2923.125(D)(1)(i), another Ohio statute employing the phrase "committed to [a] mental institution," a person is entitled to obtain a license to carry a concealed handgun if:

---

[3]  As noted above, no Fourth Amendment violation exists if a search warrant affidavit contains sufficient facts to establish probable cause after the false statements contained in the affidavit are purged.

> (I) The applicant has not been adjudicated as a mental defective, has not *been committed to any mental institution*, is not under adjudication of mental incompetence, has not been found by a court to be a mentally ill person subject to hospitalization by court order, and is not an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

Ohio Revised Code § 2923.125(D)(1)(i) (emphasis added).

The Summit County Sheriff denied Pivar's application for a concealed weapon license, finding that Pivar had been adjudicated as having a mental defect and had been "committed to a mental institution."  The Ohio Court of Appeals affirmed the trial court's determination that Pivar had been "committed to a mental institution" within the meaning of § 2923.125(D)(1)(i) even though Pivar voluntarily entered a psychiatric ward for treatment.[4]

The Ohio Court of Appeals ruled:

> Here, the statute is not ambiguous.  The word "committed" is not modified by the words voluntary or involuntary.  Under Ohio law, commitment may be voluntary or involuntary and the legislature provides "a person who is committed, voluntarily or involuntarily" with the same rights.  R.C. 5122.29.  There is no support for Pivar's statutory interpretation that "committed to a mental institution" means only involuntary commitment.  If Pivar was committed to a mental institution, voluntarily or involuntarily, he has not met the requirements of R.C. 2923.125(D)(1)(i).

*Pivar*, 170 Ohio St.3d at 709.

Bosco contends that, even if he falsely stated that Shepherd was involuntarily committed to a mental health facility in his search warrant affidavit rather than voluntarily

---

[4] The evidence showed that Pivar was "hospitalized at St. Thomas Hospital for psychiatric treatment."  In addition, there was "evidence of multiple incidents of erratic behavior including threatening sheriff's department personnel, discharging a firearm at [Pivar's] girlfriend's house, arriving at a Doctor's office with hand grenades, as well as suicidal tendencies."

committed, *Pivar* establishes that such fact is not material to a probable cause determination that Shepherd possessed a weapon under a disability under Ohio Revised Code § 2923.13 and Bosco is entitled to qualified immunity on summary judgment. This argument by Bosco is persuasive. *Pivar* interpreted virtually identical language to the language in Ohio's weapons under a disability statute and held that "commitment" to a mental institution exists whether a person is committed voluntarily or involuntarily. Accordingly, even if Bosco's false statements in his search warrant affidavit that Shepherd was "involuntarily" transported and committed to the Brecksville VA hospital are set aside, under *Pivar*, probable cause would still exist to believe that Shepherd possessed a weapon while under a "disability" within the meaning of Ohio Revised Code § 2923.13 because there is no legitimate dispute that Shepherd voluntarily received treatment at a mental health facility for homicidal psychiatric symptoms. The voluntary treatment Shepherd sought is similar to the treatment sought by the plaintiff in *Pivar*.

In their opposition brief, plaintiffs dispute that Shepherd was "committed" to a mental institution, asserting that he "simply voluntarily sought mental health treatment, like millions of other people." (Opp. at 18.) However, plaintiffs cite no case authority supporting their position or contrary to *Pivar*. Plaintiffs also argue that involuntary treatment is necessary for the felony because Bosco and the prosecuting attorney in Shepherd's weapons under a disability case both believed involuntary commitment to be necessary in order to support the charge. However, as Bosco points out in his reply brief, probable cause determinations are not dependent on officers' subjective beliefs. (*See* Rep. at 15-16.)

In sum, *Pivar* is persuasive to demonstrate that Shepherd is entitled to qualified

immunity.  Even if Bosco's false statements in his search warrant affidavit that Shepherd was "involuntarily" transported and committed to the VA facility in Brecksville are disregarded or set aside, there was still probable cause to believe that Shepherd committed the felony of possessing a weapon under a disability under Ohio Revised Code § 2923.13.  Shepherd sought mental health treatment similar to treatment found to constitute "commitment" to a mental institution in *Pivar*.  Accordingly, Bosco is entitled to qualified immunity on the basis that his false statements were not material to a finding of probable cause.

**Conclusion**

In that Bosco is entitled to qualified immunity on plaintiffs' remaining Fourth Amendment claim, Bosco's motion for summary judgment is granted.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/12/12